# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:07CV165-H

| | |
|---|---|
| CARYN TESTA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM AND ORDER** |
| ) | |
| ELECTRONIC DATA ) | |
| SYSTEMS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the Defendant's ". . . Motion to Dismiss Plaintiff's Second, Third, Fourth and Fifth Causes of Action" (document #6) and ". . . Brief in Support . . ." (document #7), both filed April 24, 2007. On May 8, 2007, the Plaintiff filed her ". . . Memorandum in Opposition . . ." (document #9). The Defendant filed its ". . . Reply . . ." (document #15) on May 21, 2007.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for determination.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will grant in part and deny in part the Defendant's Motion to Dismiss, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This action seeks damages and equitable relief for sexual harassment, retaliation, and constructive discharge in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e ("Title VII") and state public policy, state law claims for intentional and negligent infliction of

emotional distress, and negligent supervision and retention of employees.

The Plaintiff, Caryn Testa, is a resident of Mecklenburg County. The Defendant, Electronic Data Systems Corporation, is a Delaware corporation. The Plaintiff was employed by the Defendant from May 1997 to May 2006, beginning as an administrative assistant to an account manager in Rochester, New York. In April of 2000, she was promoted to Executive Administrative Assistant, and soon thereafter transferred to Charlotte, North Carolina (retaining her promotion with the transfer). Over the next four years, the Plaintiff continued in her position with continually increasing responsibility. For example, in June of 2003, she began to work full-time on the Bank of America account.

In March 2004, the Plaintiff began reporting to Mike Littell, the Enterprise Client Delivery Executive for the Bank of America account. Although Mr. Littell was based in Plano, Texas, he made frequent trips to North Carolina due to his work on the Bank of America account. During the time that the Plaintiff worked with Mr. Littell, he spent approximately three or four days a week in Charlotte and until July of 2004 his conduct toward her was professional and cordial.

Taking the allegations in the Complaint as true, in July and August of 2004, Mr. Littell began to "repeatedly sexually harass[]" the Plaintiff. "The harassment included harassing and persistent requests that [the Plaintiff] go out with him; emails about personal matters; discussions about Littell's home life and sexual matters; comments about [the Plaintiff's] appearance; and hostility when [she] declined to go out socially with [Littell]." When she refused his advances, the Plaintiff "felt very threatened by Mr. Littell, and anxious that if she did not date him, she would lose her job." As a result, she sought medical treatment and counseling.

In late July of 2004, the Plaintiff researched the Defendant's procedures on reporting sexual

harassment and then followed the procedures by complaining of Mr. Littell's behavior to company manager Larry Ivins. Shortly thereafter, Nancy Kerutis, a Human Relations Representative for the Defendant, contacted the Plaintiff regarding her complaint. Although Ms. Kerutis initially tried to discourage the Plaintiff from pursuing her complaint, she relented and agreed to investigate after she learned that the Plaintiff had retained several voice mails from Mr. Littell which would support her allegations.

Four months later, in January of 2005, the Plaintiff learned that the Defendant had concluded that at least some inappropriate conduct occurred. Following the investigation the Plaintiff was assigned to support another account executive based in Texas and was removed from the Bank of America account. However, Mr. Littell continued in his position working on the Bank of America account. The Plaintiff was assured that once another executive was hired to work on the Bank of America account, she would be restored to her former position. When the Plaintiff complained about losing the Bank of America account, Ms. Kerutis responded, "oh c'mon Caryn, what did you expect?" Meanwhile, Mr. Littell actually received an award from the Defendant given to an employee with a "winning teamwork attitude" and "behaviors that restore trust."

As a result of her complaint, from August of 2004 until the Plaintiff left the company in May of 2006, the Plaintiff alleges that she suffered from numerous retaliatory acts. These acts include being given less responsible work assignments, "being ostracized by her managers," receiving lower performance evaluations, and being denied financial compensation to which she was entitled. As a result the Plaintiff alleges that she "has suffered substantial emotional distress," and that in May of 2006, she was "constructively discharged" from her position.

The Plaintiff then filed a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC"), which, on April 28, 2006, issued a cause determination finding that there was "reasonable cause to believe that Respondent discriminated against Charging Party in violation of Title VII." On September 12, 2006, the EEOC issued a right to sue letter.

On December 11, 2006, the Plaintiff filed her Complaint in the Superior Court of Mecklenburg County, North Carolina, alleging claims for sexual harassment, retaliation, and constructive discharge in violation of Title VII and state public policy, intentional and negligent infliction of emotional distress, and negligent supervision and retention of employees. On April 17, 2007, the Defendant removed the state court action to federal court. Removal has not been challenged and appears proper. On April 24, 2007, the Defendant filed the subject Motion, which has been fully briefed as set forth above and is, therefore, ripe for determination.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996) (en banc), citing Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir.

4

1989); and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Accord Republican Party of NC, 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

### B. North Carolina Public Policy Claim

The Plaintiff has consented to the dismissal of this cause of action, noting that

> [a]lthough [she] believes that the language of North Carolina's Equal Employment Practices Act and certain North Carolina Court of Appeals cases support this second cause of action, [she] recognizes that most of the federal cases addressing this issue have not found a common law claim under the policies of the EEPA in the absence of a wrongful discharge claim.

Accordingly, the undersigned will grant the Defendant's Motion to Dismiss the Plaintiff's North Carolina public policy claim.

### C. Intentional and Negligent Infliction of Emotional Distress Claims

The Defendant argues that both the intentional and negligent infliction of emotional distress claims should be dismissed because the Plaintiff does not allege conduct sufficiently "extreme and outrageous" to support these claims.

In North Carolina, to state a claim for intentional infliction of emotional distress a plaintiff

5

must show: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress of another. See Thomas v. Northern Telecom, Inc., 157 F. Supp. 2d 627, 634-35 (M.D.N.C. 2000); Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981); and Simmons v. Chemol Corp., 137 N.C. Ct. App. 319, 325, 528 S.E.2d 368, 371 (2000).

North Carolina law establishes a stringent standard that permits liability to be imposed only where the conduct at issue is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hogan v. Forsyth Country Club, 79 N.C. App. 483, 493-94, 340 S.E.2d 116, 123 (1986). Whether the conduct alleged meets this stringent standard is a question of law for the court, not a question of fact for the jury. Id. 79 N.C. App. at 490, 340 S.E.2d at 121. Accord Wagoner v. Elkin City Schools' Bd. of Educ., 113 N.C. App. 579, 586, 440 S.E.2d 119, 123; Johnson v. Bollinger, 86 N.C. App. 1, 11, 356 S.E.2d 378, 381 (1987); and Briggs v. Rosenthal, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311(1985). Furthermore, "in employment actions, North Carolina courts have been reluctant to find intentional infliction of emotional distress claims actionable." Frazier v. First Union Nat. Bank, 747 F. Supp. 1540, 1553 (W.D.N.C. 1990).

To state a claim for negligent infliction of emotional distress, the Plaintiff must allege that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress." McDougal-Wilson v. Goodyear Tire and Rubber Co., 427 F. Supp. 2d 595, 619-20 (E.D.N.C. 2006) (internal citations omitted). "Severe emotional distress" means "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which

6

may be generally recognized and diagnosed by professionals trained to do so." Johnson v. Ruark Obstetrics and Gynecology Assoc., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

Having examined the standards for both claims, it is apparent that if the Plaintiff has sufficiently alleged extreme and outrageous conduct for her intentional infliction of emotional distress claim, she will also have alleged conduct sufficient for the negligent infliction of emotional distress claim to survive. The Plaintiff has alleged that her boss continually harassed her sexually, and when she complained she was essentially demoted while he was honored for being an outstanding employee. She has alleged that she was embarrassed and humiliated. Mr. Littell allegedly made "harassing and persistent requests that [the Plaintiff] go out with him," sent "e-mails about personal matters," told her about his home life and sexual matters, made comments about her appearance, and was hostile when she refused to go out with him socially.

At this stage in the proceedings, it cannot be said that, as a matter of law, the Plaintiff has not alleged extreme and outrageous conduct. See Denning-Boyles v. WCES, Inc., 123 N.C. App. 409, 412-14, 473 S.E.2d 38, 40-41 (1996) (finding that sexual remarks and advances were sufficiently extreme and outrageous to survive *summary judgment*). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Further, "a complaint need not 'make a case' against a defendant or '*forecast evidence* sufficient to prove an element' of the claim. . . . It need only '*allege facts* sufficient to state elements' of the claim." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (internal citations omitted and emphasis in original). The Plaintiff has alleged facts sufficient to support these two claims. Whether the sexual comments and advances will ultimately be sufficiently outrageous remains to be determined, but the Plaintiff has at least alleged such at this stage. Thus, the undersigned will deny the

7

Defendant's Motion to Dismiss the Plaintiff's intentional and negligent infliction of emotional distress claims.

   **D. Negligent Supervision and Retention Claim**

"To state a claim for negligent supervision or retention, a plaintiff must allege that the defendant's employees committed tortious acts of which the defendant had actual or constructive knowledge." Efird v. Riley, 342 F. Supp. 2d 413, 429-30 (M.D.N.C. 2004) (citation omitted). The Defendant argues that even if the Plaintiff has satisfied the "tortious act" element of this claim, she has failed to plead facts which would support that the Defendant knew or should have known of its employees' propensity to engage in such acts prior to the acts.

First, the Court notes that the Plaintiff's claims for intentional and negligent infliction of emotional distress have survived the Defendant's Motion to Dismiss, and as such, do satisfy the "tortious act" element at this stage in the proceedings. Further, even if those claims had not survived, it has been "assumed that Title VII violations can serve as the 'tortious act' element of a state law negligent supervision/retention claim." Efird, 342 F. Supp. 2d at 430 (noting that district courts in the Fourth Circuit have so held, reasoning that the Fourth Circuit Court of Appeals has declined to rule on the issue and that no North Carolina court has ever held to the contrary).

The Defendant's second argument, that the Plaintiff failed to allege that it knew or should have known of its employees' propensity to engage in such acts prior to the acts, must also fail. The Defendant is correct in its assertion that it must have known of the employees' propensity *prior* to the alleged tortious act. McDougal-Wilson, 427 F. Supp. 2d at 620-21 (citations omitted). However, in examining the Complaint in the light most favorable to the Plaintiff, it cannot be said as a matter

of law that she could prove no set of facts which would entitle her to relief under this claim. Rather, as discussed above, at this early stage in the proceedings, the Plaintiff has sufficiently alleged such facts.

Accordingly, the undersigned also will <u>deny</u> the Defendant's Motion to Dismiss the Plaintiff's negligent supervision and retention claim.

### III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The Defendant's ". . . Motion to Dismiss . . ." (document #6) is **GRANTED** as to the Plaintiff's North Carolina public policy claim, and **DENIED** as to the Plaintiff's negligent and intentional infliction of emotional distress claims, and negligent supervision and retention of employees claim.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED, AND DECREED.**

Signed: May 22, 2007

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge